IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 13-cv-01703-RBJ

ERNEST McDONALD,

    Plaintiff,

v.

THE BOEING COMPANY,

    Defendant.

# ORDER

Before the Court is a motion for summary judgment by defendant The Boeing Company ("Boeing") in this case alleging violations of Title VII of the Civil Rights Act of 1964 and the Colorado Anti-Discrimination Act ("CADA"). ECF No. 21. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367. The motion is fully briefed and ripe for review. For the reasons stated below, the Court grants the motion.

## I.    Factual Background

The plaintiff in this case is Ernest McDonald, a former employee of Boeing's who is currently suing the company for allegedly terminating him on account of his race as an African American. While at Boeing, Mr. McDonald worked as a Mission Operation Specialist—Level 3 ("MOS3") on a classified government program (the "Program") at Buckley Air Force Base in Colorado. The U.S. Government determines the Program's annual operating budget. ECF No. 21, Ex. A at 76:14-22. Beginning in 2008, the government began reducing the program's funding, leading Boeing to conduct a reduction in force ("RIF"). ECF No. 21, Ex. C, ¶¶ 5-8.

This RIF included Mr. McDonald's position. At that time, Mr. McDonald and other MOS3s received advance notices of impending termination. Apparently as a matter of policy, Boeing works with employees who have received notice of impending termination to find them alternative, internal employment opportunities. Through this policy, Boeing was able to transfer Mr. McDonald to a Systems Engineer Support Analyst—Level 4 ("SESA4") position in a different classified program in Colorado Springs. ECF No. 21, Ex. A at 92:20-93:2, 104:15-22. Mr. McDonald worked in this capacity from August 2008 through February 2009. The transfer came with a salary increase from $69,000 to $80,000.

At this time, the program suffered a second round of budget cuts. *Id.* at 117:12-14. Boeing conducted another RIF, which included Mr. McDonald's new position, and the company issued him yet another advance notice of termination. He was not the only SESA4 to receive such a notice. *Id.* at 118:10-15. Mr. McDonald remained on "overhead status" while looking internally for another job at Boeing. He received a salary increase to $81,900 at this time. Two months later, Mr. McDonald was hired back into the same job he had in 2007—an MOS3 position—and was allowed to retain his higher salary. *Id.* at 140:10-15, 23-24; 141:4-15.

Funding for the program continued to decrease over the next several years and continues to decrease today. As a result, the Air Force has asked Boeing to transition the program to full automation by 2015. ECF No. 21, Ex. C, ¶ 8. In order to meet this goal, Boeing opted to retain all Mission Operations Specialist—Level 4 ("MOS4") positions. *Id.* at ¶ 9; Ex. F, ¶ 9. This position requires greater certification than the MOS3 position. However, Boeing gave all MOS3 employees an opportunity to complete the requisite certification for MOS4 prior to the elimination of the MOS3s. *Id.*

In 2012, Boeing implemented another RIF, this time in the MOS3 position as it worked toward its eventual goal of eliminating MOS3s and transitioning to full automation. At the time, the company decided to retain four out of eight MOS3 employees. Boeing claims that it conducted this RIF pursuant to its "Reduction in Force (RIF) and At Risk Skill Assessment Salaried/Hourly Nonunion Process Guide." ECF No. 21, Ex. B ¶ 5; Ex. F ¶ 8; Ex. G ¶ 5; *see also* Ex. KB-2. Employees affected by an RIF under this policy

> are assessed using the following criteria and weighing: (a) 60% based on general and technical competencies; and, (b) 40% on the prior year's Performance Management measurement, i.e., performance evaluation. With regard to the Performance Management measurement: (a) 20% is based on the prior year's performance evaluation scores on an employee's business goals and objectives; and, (b) 20% is based on the prior year's performance evaluation's rating on the employee's values and leadership attributes. . . . The competencies did not include seniority, time in position, tenure or the status of an employee's security clearance.

ECF No. 21, Ex. G, ¶¶ 6, 7. This assessment yields a total score by which the employees are ranked. *Id.* ¶ 8. Timothy Ferreira, the former Program Operations Manager—who oversaw all eight MOS3 employees—entered his assessments of each employee into a computer program. ECF No. 21, Ex. F, ¶¶ 7, 8; Ex. G, ¶¶ 4, 8. According to Mr. Ferreira, employees' race and color were not considered during this process. ECF No. 21, Ex. F, ¶¶ 8, 9. The computer program then ranked each employee according to the predetermined criteria. Mr. Ferreira then shared the results with James Barduniotis, a Functional Engineering Manager, and Kathleen Benavides, a Human Resources Generalist. The three agreed with the computer rankings, the scores were not changed, and the four lowest scoring employees were selected for potential termination. ECF No. 21, Ex. G, ¶¶ 9-10. Among this group were Mr. McDonald, a Hispanic male, and two white males. *Id.* The white males were the lowest ranked MOS3 employees. *Id.*

Boeing sent Mr. McDonald a notice of possible termination, ECF No. 21, Ex. A at 152:20-153:9, and assisted him in a job search, *id.* at 162:25-164:12. This time Mr. McDonald was not offered another job within the company, and he was terminated on August 24, 2012. ECF No. 21, Ex. B, ¶ 19. The two white males who ranked lower than Mr. McDonald were also terminated pursuant to the 2012 RIF. *Id.* ¶ 20.

Two days prior to his termination, Mr. McDonald filed a complaint with Boeing alleging racial discrimination and harassment. This complaint was his first allegation of any discrimination or harassment at the company. ECF No. 21, Ex. A at Dep. Ex. 28. The Boeing internal investigation concluded that Mr. McDonald's claims lacked merit. Later on October 15, 2012, Mr. McDonald filed a Charge of Discrimination with the Colorado Civil Rights Division and the Equal Employment Opportunity Commission. ECF No. 21, Ex. A at 255:14-256:8. These charges alleged that he was laid off because of his race. On May 10, 2013, the EEOC issued a Right to Sue letter to Mr. McDonald. ECF No. 1, ¶ 5.

When asked to identify a similarly situated employee who was treated differently, Mr. McDonald identified James Pepe. ECF No. 21, Ex. A at 154:22-155:4. Mr. McDonald argues that Mr. Pepe was still in training at the time of the 2012 RIF. *Id.* Boeing notes that Mr. McDonald admits that he is unfamiliar with Mr. Pepe's work history at Boeing, *id.* at 235:10-13, and that Mr. Pepe had been with Boeing since 2005 and in the Program since 2011, ECF No. 21, Ex. B, ¶ 15.

Mr. McDonald filed a complaint alleging discrimination in violation of Title VII and CADA on June 27, 2013. During this litigation, Mr. McDonald revealed additional evidence that he believes suggests Boeing's 2012 purported reason for his termination was a pretext for underlying racial discrimination. First, he notes that he and other minority employees were

4

subject to Fox News playing on company televisions. ECF No. 21, Ex. A at 289:4-290:3. Second, he claims that fellow employees resented the pay raise he received while working in Colorado Springs. *Id.* at Dep. Ex. 28. Third, he alleges that someone referred to him as "homey." *Id.* at 262:3-9. Fourth, he claims to have heard that another employee used the "N word" in 2008. *Id.* at 22:23-263:17. Fifth, he reveals that he learned during preparations for his deposition that another Boeing employee, Tim Cook, once said "I wouldn't know you were there if you didn't smile" to an African American security guard at Boeing. *Id.* at 260:9-261:3; 269:21-4. There is also some indication that two individuals—who do not appear to have played any decision-making role in the RIF—said at one point that "if we judge [Mr. McDonald] on his performance, he'll just play the race card." ECF No. 23, Ex. 6, Depo. Ex. 38 at 2. As far as the Court can tell, none of these incidents was ever reported to Boeing prior to his August 22, 2012 complaint, or alternatively, they were comments that were not directed toward Mr. McDonald and he only became aware of them after this litigation commenced.

**II.     Discussion**

Mr. McDonald's response to Boeing's motion for summary judgment clarifies that he is not bringing claims against Boeing based on a hostile work environment nor for the RIFs from 2008 and 2009. ECF No. 23 at 12. Rather Mr. McDonald refers to the facts underlying these events in order to bolster his claims of discriminatory treatment in connection with his termination pursuant to the 2012 RIF. Therefore the Court proceeds to analyze Boeing's motion only with respect to Mr. McDonald's claim based on alleged discrimination in the 2012 RIF, although in conducting this analysis I pay attention to these other events highlighted by Mr. McDonald.

### a. Standard of Review

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The Court will examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Concrete Works of Colorado, Inc. v. City and County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

### b. 2012 Termination

Mr. McDonald alleges that his termination in 2012 was an act of discrimination against him on the basis of his race in violation of Title VII and CADA. Because Mr. McDonald relies on circumstantial rather than direct evidence to prove his case, the burden-shifting framework from *McDonnell Douglas Corp. v. Green* applies. 411 U.S. 792, 802-04 (1973). Under the *McDonnell Douglas* framework, plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Id.* at 802-04. If the plaintiff meets this burden, the burden of production then shifts to the defendant to provide a legitimate, non-discriminatory reason for the

employment action. *Id.* at 802-03. Finally, the burden shifts back to plaintiff to show that the defendant's reasons were a pretext for unlawful discrimination. *Id.* at 804.

### i. Mr. McDonald Alleges a Prima Facie Case of Race Discrimination.

Boeing concedes, for purposes of this motion, that Mr. McDonald can prove a prima facie case of discrimination. Therefore, the Court will consider Mr. McDonald's burden satisfied on this first step of the *McDonnell Douglas* framework.

### ii. Boeing Provides Non-Discriminatory Reasons for Mr. McDonald's Termination.

Because Mr. McDonald can prove a prima facie case of discriminatory termination, the burden shifts to Boeing to provide a legitimate, non-discriminatory reason for the termination. That burden is "exceedingly light." *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1279 (10th Cir. 1999), *cert. denied*, 528 U.S. 814 (1999).

In this case, Boeing demonstrates that the federal government determines the funding for the program, and that over the last six years that funding has decreased. Boeing is no longer able to maintain historic staffing levels in the program. As a result, the company decided to conduct a RIF and terminate employees. This explanation is a quintessentially legitimate, non-discriminatory reason for a layoff. That is not to say it is the true reason that Boeing fired Mr. McDonald, but on its face it meets Boeing's burden to produce a non-discriminatory justification for its action. *See Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1455 (10th Cir. 1996) ("If economic conditions force an employer to lay-off employees and those layoffs are based on neutral rankings, the employer has provided a legitimate, non-discriminatory reason for the termination."). Indeed, Mr. McDonald essentially concedes this point. His arguments on this second prong are actually arguments that the facially legitimate reason is pretext for an

underlying discriminatory motive. *See* Response, ECF No. 23 at 16-17. It is to that issue—and the third step in the *McDonnell Douglas* framework—that I now turn.

### iii. Mr. McDonald Cannot Prove that Boeing's Reasons Were Pretextual.

Where a defendant meets its burden of providing a non-discriminatory reason for an adverse employment action, the burden shifts back to the plaintiff to demonstrate that the reasons are pretextual. *McDonnell Douglas*, 411 U.S. at 805 ("[R]espondent must be given a full and fair opportunity to demonstrate by competent evidence that the presumptively valid reasons for his rejection were in fact a coverup for a racially discriminatory decision."). Such proof may be demonstrated by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Argo v. Blue Cross & Blue Shield of Kan.*, 452 F.3d 1193, 1203 (10th Cir. 2006).

> There are three common methods used to demonstrate pretext in the RIF context: (1) evidence that the termination of the employee is inconsistent with the employer's RIF criteria; (2) evidence that the employer's evaluation of the employee was falsified to cause termination; or, (3) evidence that the RIF is more generally pretextual.

*Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1140 (10th Cir. 2002).

In this case, Mr. McDonald makes essentially four arguments in an attempt to illustrate the pretext underlying Boeing's RIF. None of them raises a genuine dispute of material fact sufficient to survive summary judgment.

First, Mr. McDonald alleges that his termination was inconsistent with the RIF criteria. The only fact he offers in support of this argument is that Mr. Pepe was ranked higher despite his lack of seniority. However, as explained above, seniority was not one of the criteria evaluated in

the RIF.  ECF No. 21, Ex. G, ¶ 7.  Mr. McDonald even appears to acknowledge that this argument fails to expose an inconsistency.  Response, ECF No. 23, ¶ 47.  Rather the gravamen of his argument here is that seniority *should* have been one of the criteria, and that the use of other "subjective" rather than objective criteria was inherently discriminatory.  *Id.*  The Court does not doubt that insidious racial discrimination sometimes lurks behind subjective evaluations.  Yet Mr. McDonald has done nothing to explain how these subjective criteria were pretextual.  In the absence of some indication that the criteria themselves were a pretext for racial discrimination, an employer is allowed to "choose the criteria it wishes."  *Eke v. Caridian BCT, Inc.*, 490 Fed. App'x 156, 164-65 (10th Cir. 2012).

Second, Mr. McDonald claims that the RIF rankings were unfair because Mr. Ferreira was responsible for supervising seven of the employees but not for supervising Mr. Pepe over the entire relevant evaluation period.  As a result, the RIF was based on evaluations from some other supervisor of Mr. Pepe's and ended up comparing "apples with oranges."  Response, ECF No. 23, ¶ 50.  Mr. Ferreira was in fact Mr. Pepe's supervisor.  ECF No. 21, Ex. F ¶ 7; Ex. G ¶ 4. That Mr. Ferreira may have relied on assessments from other supervisors strikes this Court as irrelevant.  Mr. McDonald has not explained how such a practice yielded a discriminatory result, nor has he pointed to any case law disapproving of the practice.  In fact, such a practice seems essential to any large company attempting to compare the performance of multiple employees in different divisions. Without some inkling of how this reliance on another supervisor's rankings illustrates pretext, assuming that is in fact what happened, the Court does not see a genuine dispute of *material* fact here.

Third, Mr. McDonald alleges that Boeing manipulated the RIF results. However he fails to offer any evidence of manipulation, and he admits that the results were never changed from the outcome dictated by the application of the RIF criteria. Response, ECF No. 24 ¶¶ 34, 50.

Finally, Mr. McDonald offers evidence of prior racial harassment as evidence of a hostile workplace. *McDonnell Douglas* does contemplate the use of such evidence in support of a plaintiff's argument that an adverse employment action was pretextual. He points to the facts described above: that Fox News played on company televisions, that someone called him "homey" in jest, that he once heard that someone used the "N word" at work, and that an employee with no connection to his termination once made racially-insensitive comments to a Boeing security guard.[1] But the law requires more. "Isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions." *Rea*, 29 F.3d at 1457.

> In order to establish pretext, 'the plaintiff must demonstrate a nexus between the allegedly discriminatory statements and the defendant's decision to terminate him. A causal nexus can be shown if the allegedly discriminatory comments were directed at plaintiff . . . which resulted in the adverse action taken against the plaintiff.

*Sydney v. ConMed Elec. Surgery*, 275 F App'x 748, 754 (10th Cir. 2008) (quoting *Rea*, 29 F.3d at 1497) (ellipsis in original). The facts Mr. McDonald points out share no causal nexus with Boeing's decision to terminate him. They are all unrelated to the decision or unrelated to the individuals who made the decision. Ultimately the decision was made based on neutral criteria by a computer program, and Mr. McDonald was terminated along with two other white

---

[1] Whether forcing someone to watch Fox News could be viewed as indicative of a work environment that is hostile to minority employees is a proposition on which I need not comment. Mr. McDonald has acknowledged that "there were various television screens going at all times in the building," including CNN, and that he had a choice. McDonald Deposition at 289-90 [ECF No. 21, Ex. A at 45-46].

employees who ranked lower than he did.  On these facts, there is no indication that Mr. McDonald can carry his burden of proof on the issue of pretext.

### III.     Conclusion

Because Mr. McDonald cannot raise a genuine dispute of fact suggesting that the reasons for his termination were pretext for underlying racial discrimination, his case cannot survive summary judgment.  Therefore Boeing's motion for summary judgment on all claims [ECF No. 21] is GRANTED.  Final judgment will enter in favor of the defendant.  Pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.L.Civ.R. 54.1, defendant is awarded its reasonable costs.

DATED this 9th day of July, 2014.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge